# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

DON MURPHY,

      Petitioner,                      Case No. 1:18-CV-10737

v.                                  HONORABLE THOMAS L. LUDINGTON
                                       UNITED STATES DISTRICT JUDGE

THOMAS WINN,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Don Murphy, incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Oakland County Circuit Court of three counts of assault with intent to commit murder, Mich. Comp Laws § 750.83; one count of assault with intent to do great bodily harm, Mich. Comp Laws § 750.84; one count of felon in possession of a firearm, Mich. Comp Laws § 750.224f; and four counts of possession of a firearm in the commission of a felony (felony firearm) (second offense) Mich. Comp Laws § 750.227b. Petitioner was sentenced under Mich. Comp Laws § 769.12 as a fourth felony habitual offender for twenty-five to seventy-five years on the assault with intent to commit murder and great bodily harm convictions, six to seventy-five years for the felon in possession conviction, and five years on the felony firearm conviction. Petitioner contends that his right to confrontation was violated and that he was denied the effective assistance of trial and appellate counsel. The Respondent has filed an answer to the petition, asserting that the claims lack merit and/or are procedurally defaulted. Petitioner's claims are without merit and will be denied.

I.

The relevant facts relied upon by the Michigan Court of Appeals are recited verbatim, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

## I. BACKGROUND

On February 13, 2012, defendant and Christopher Buccannion physically assaulted Everett Felton inside Prue's Bar in Pontiac. [1] Apparently fueled by racial animus, the Caucasian assailants beat the African–American victim with their fists and bar stools. The incident was captured by the bar's security cameras.

After the assailants left, the severely injured Everett stood up and left the bar. Everett walked to a nearby relative's home. Fearing additional violence, the relatives would not let Everett enter. His cousin called his sister, Micarle Felton, advising her of Everett's injuries. Everett then walked to Huron Plaza Store and the owner administered first aid and contacted the police.

Micarle found Everett at the store and he told her about the events at the bar. Everett's friend, Tanesha Hill, also entered the store to make a purchase and learned of Everett's assault. Buccannion then walked in, Everett identified him as one of the attackers, and Everett, Micarle and Hill chased him outside. Buccannion yelled to defendant, who was sitting in a car parked outside. Defendant jumped out of the vehicle and retrieved a revolver. Defendant fired four or five shots, striking Micarle in the back, Hill in the arm, and Everett in the leg. All three were transported to the hospital for treatment.

## II. LOCATING WITNESSES FOR THE PROCEEDINGS

At defendant's and Buccannion's joint preliminary hearing on March 15 and 19, 2012, all three victims of the February 13 events testified. Micarle was the first to take the stand and she expressed her displeasure with being forced to participate in the proceedings. An officer brought her to the courthouse to ensure her participation. She was argumentative with the defense attorneys and the court, eventually exclaiming, "I'm sorry, Your Honor, I'm just frustrated. They making [sic] me do this." Micarle identified "they" as "[t]he police" and claimed she had only learned that she would be required to testify an hour earlier. Hill did not appear on the first day of the preliminary examination and officers had to secure her presence as well. Hill was more cooperative once on the stand.

---

[1] Defendant and Buccannion were tried together before a single jury but with separate counsel. The jury convicted Buccannion of one count of assault with intent to do great bodily harm less than murder, MCL 750.84. (Footnote original).

Trial was originally scheduled for July 13, 2012, but was rescheduled due to a conflict with the court's and attorneys' schedules. On September 15, the parties returned for trial, which had to be postponed again because the court was conducting a jury trial in another matter that had run over. Trial was then pushed back to November 29, 2012.

At the onset of defendant's and Buccannion's joint trial, the prosecutor noted that Everett Felton had been arrested and was in jail awaiting trial in an unrelated case. Everett would therefore be transported to the courthouse to testify. Neither Micarle Felton nor Hill was present, however. The prosecutor sought admission of the witnesses' preliminary examination testimony. The court conducted a hearing to determine whether the prosecutor had used due diligence to secure the witnesses' presence at trial. Oakland County sheriff's detective John MacDonald testified about his attempts to locate Hill and Micarle. MacDonald claimed that he made attempts to locate the female victims each time the trial was scheduled, but was never able to serve them.

MacDonald indicated that he left a subpoena for Hill at one of her prior addresses with a man who claimed Hill still lived there. The detective contacted the sheriff's department fugitive team for assistance in locating the witnesses, but the responding sergeant said the department was too busy to help. MacDonald searched the databases of several local county jail systems to determine if the witnesses had been incarcerated and "CLEMIS" to ascertain whether either had had a run in with any police agencies. He contacted local hospitals and the Oakland County medical examiner to ascertain whether the witnesses were injured or dead. He used a system called "Accurate" to trace any known addresses of Hill, Micarle, or their relatives. The phone numbers MacDonald collected from the witnesses seemed to be invalid. He left approximately 20 messages at the number provided by Micarle with no response. The number provided by Hill was out of service. At one point, the detective bumped into Hill at the courthouse and she provided a new number. That number was disconnected shortly thereafter. MacDonald did not attempt to contact the phone companies to track down the witnesses' numbers. The detective claimed he spoke to witness Everett, but he did not know the whereabouts of his sister.

The court ruled that the prosecutor had used due diligence in searching for the witnesses. Accordingly, over defense counsels' objections, the court permitted the prosecutor to read into the record the preliminary examination testimony of Micarle and Hill.

At defendant's sentencing, however, his trial counsel created a record that MacDonald had not in fact conducted a diligent search before each rescheduled trial date. On November 9, 2012, 20 days before the final trial date, Hill was arrested and incarcerated at the Oakland County Jail. She remained incarcerated throughout the five-day trial. Had MacDonald made a timely search of the Oakland County jail system, he would have found this witness and she could have been presented at trial.

*People v. Murphy*, No. 314333, 2014 WL 1515419, at *1–2 (Mich. Ct. App. Apr. 17, 2014).

Petitioner's conviction was affirmed. *Id., lv. Den.* 497 Mich. 953, 858 N.W. 2d 426 (2015).

Petitioner filed a petition for writ of habeas corpus. Petitioner also moved to hold the petition in abeyance so that he could return to the state courts to exhaust additional claims, but the motion was denied. *Murphy v. Fenby*, No. 15-11693, 2015 WL 7180456 (E.D. Mich. Nov. 16, 2015). The Court subsequently granted Petitioner's motion to voluntarily dismiss the petition without prejudice. *Murphy v. Fenby*, No. 15-11693, Dkt. # 11 (E.D. Mich. Dec. 7, 2015).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.* The trial court denied the motion. *People v. Murphy,* No. 12-240730-FC (Oakland Cty.Cir.Ct., June 20, 2016). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Murphy,* No. 333761 (Mich.Ct. App. Dec. 21, 2016); *lv. den.* 501 Mich. 967, 905 N.W. 2d 598 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr. Murphy is entitled to a new trial were [sic] the trial courts decision that the prosecution witness, Tynesha Hill was unavailable, and thus her recorded testimony from the preliminary examination could be read into the record under MRE 804(b)(1), was reversibly erroneous. As that ruling was based upon false or stale testimony, that the police checked with the county to see if Ms. Hill was incarcerated there, and the record shows she was incarcerated at the jail and was available to testify at the trial in person. The presentation of her recorded testimony in lieu of live testimony violated Mr. Murphy's constitutional right to confrontation and was not harmless beyond a reasonable doubt.

II. Murphy's right's [sic] under U.S. Const. Amend. 6; and M.C.L. Const. 1963 Art. 1 Sec. 13, guaranteeing the effective assistance of counsel on appeal, were violated where his appeal counsel failed to raise two issues that would have been stronger than at least one of the two issues actually raised.

III. Mr. Murphy was denied his right to effective assistance of counsel guaranteed by the United States Constitution Amend. 6, where his trial counsel mislead [sic] important prosecution witnesses prompting them to give damaging testimony against Murphy.

IV. Mr. Murphy's federal and state right's [sic] to confrontation were violated by the erroneous admission of Micarle Felton's prior recorded testimony.

V. Mr. Murphy's federal and state right's [sic] to effective assistance of were [sic] violated where his appeal counsel failed to challenge his conviction for assault with intent to do great bodily harm less than murder.

VI. Murphy's appointed appeal counsel failed to challenge his sentence for assault with intent to do great bodily harm less than murder. The sentencing judge exceeded the sentencing guidelines and failed to state any reason for departing from the guidelines.

Respondent filed an answer to the petition on October 9, 2018 (Dkt. # 8). Petitioner filed a motion for discovery and a reply brief on November 16, 2018. (Dkt. # 10).

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern this case and "circumscribe" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996); *see Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F. 3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (*quoting Williams v. Taylor*, 529 U.S. 362, 409 (2000)(internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant

to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F. 3d 81, 84 (6th Cir. 1996)(stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be 'given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated

for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached")(internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)(noting that the Supreme Court "has held on numerous occasions that it is not…'an unreasonable application of clearly established Federal law' 'for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.'") (*quoting Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Phillips v. Bradshaw*, 607 F. 3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F. 3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F. 3d 587, 594-95 (6th Cir. 2008).

III.

A.

Petitioner's first and fourth claims will be consolidated for judicial clarity. Petitioner argues that his Sixth Amendment right to confrontation was violated by the admission of the preliminary examination testimony of Ms. Hill and Ms. Felton, who were declared unavailable to testify. Petitioner argues that the preliminary examination testimony should not have been admitted because the prosecutor and police did not exercise due diligence in attempting to locate either woman to testify at trial.

The Michigan Court of Appeals initially concluded that the prosecutor and police did not use due diligence to locate Ms. Hill and possibly did not employ due diligence to find Ms. Felton either:

> At the due diligence hearing, the court was limited to Detective MacDonald's testimony in making its determination. Based on this testimony, the detective likely could have done more to search for the victims. Although the Feltons had family in the area, the detective spoke only to Everett and his girlfriend about Micarle's

- 7 -

whereabouts. Despite knowing three of Hill's prior addresses, Detective MacDonald spoke to no neighbors to cultivate leads. The absence of these "more stringent efforts" did not render the detective's conduct unreasonable, however. Had Detective MacDonald actually searched for the witnesses as he described before each rescheduled trial date, the court's conclusion that due diligence had been employed would be accurate. Yet, Detective MacDonald gave a false impression that he had undertaken the described steps to find the witnesses before each trial date, including searching the databases of local penal institutions. As Hill had been housed in the Oakland County Jail for 20 days before the final trial date, Detective MacDonald obviously had not made a timely inquiry into her whereabouts. Accordingly, the prosecutor clearly did not use due diligence in searching for Hill and *may not have used due diligence in searching for Micarle.*

*People v. Murphy*, 2014 WL 1515419, at * 3 (internal footnote omitted; emphasis added).

The Michigan Court of Appeals concluded that the admission of both women's preliminary examination testimony should not have been admitted at trial. *Id.,* at * 4.  The Michigan Court of Appeals, however, declined to reverse the conviction, finding the error to be harmless in light of the overwhelming evidence of Petitioner's guilt:

The prosecutor presented significant evidence linking defendant to the charged offenses related to Hill and Micarle. Everett testified at trial that defendant was the individual who exited the parked vehicle in the store parking lot and opened fire on him, Hill, and Micarle. The emergency room doctor who treated the victims and the sheriff's deputies that responded to the party store testified regarding Hill's and Micarle's gunshot wounds. The store owner testified that he knew Everett, Micarle, Hill, and codefendant Buccannion as they were all frequent customers. The store owner described Everett's arrival at the store and his decision to contact the police. The owner continued that Micarle and Hill came into the store and assisted Everett. He corroborated that Buccannion subsequently entered and that Everett identified the man as his attacker. The store owner watched Buccannion run from the store with Everett, Micarle, and Hill in pursuit. He heard three to five gunshots from the parking lot and went to the door to look out. The store owner saw another white male, not Buccannion, holding a gun. And video evidence from Prue's Bar placed defendant with Buccannion on the evening of February 13, 2012, and as the other individual involved in the assault of Everett. The jury could infer from this circumstantial evidence and Everett's direct identification that defendant was the shooter outside of the party store. This conclusion could be reached even absent Micarle's and Hill's testimony. As such, defendant cannot show that the improper admission of the preliminary examination testimony was outcome determinative.

*People v. Murphy*, 2014 WL 1515419, at * 4.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004). Although an exception to the confrontation requirement exists where a witness is unavailable and gave testimony at previous judicial proceedings against the same defendant which was subject to cross-examination, this exception is inapplicable "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968); *See also Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007).

When prosecutors seek to admit a non-testifying witness's preliminary hearing testimony, the Confrontation Clause has two requirements: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *See Pillette v. Berghuis,* 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009); *rev'd on other grds,* 408 F. App'x. 873 (6th Cir. 2010); *cert. den*. 132 S. Ct. 125 (2011) (citing *McCandless v. Vaughn*, 172 F. 3d 255, 265 (3rd Cir. 1999)).

i.

The lengths to which the prosecution must go to produce a witness, such that the admission of the witness's prior confronted testimony at subsequent trial does not violate the Confrontation Clause, is a question of reasonableness. *Hardy v. Cross,* 565 U.S. 65, 70 (2011)(quoting *Ohio v. Roberts*, 448 U.S. 56, 74 (1980)). The Supreme Court noted that "when a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken

to secure the witness's presence, but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Id.*, at 71-72. Most importantly, "the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." *Id.* at 72.

The Michigan Court of Appeals ruled that the prosecutor and the police had not used due diligence to locate Ms. Hill and possibly Ms. Micarle Felton and concluded that their preliminary examination testimony should not have been admitted. However, this Court is not required to defer to the Michigan Court of Appeals' holding. It may conduct de novo review because the AEDPA's standard of review is a "precondition to the grant of habeas relief…not an entitlement to it." See *Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007). Although the Michigan Court of Appeals speculated that the prosecutor "may not have used due diligence in searching for Micarle," there was never any showing made by Petitioner at trial, at sentencing, on appeal, or on review of his petition before this Court, as to what additional steps should have been taken to locate Ms. Micarle Felton for trial. *Murphy*, 2014 WL 1515419, at *3. Regarding both Ms. Hill and Ms. Felton, it appears that Detective MacDonald engaged in extensive efforts to locate both women for trial on both trial dates. MacDonald left a subpoena for Ms. Hill at one of her prior addresses with a man who told the detective that Hill still lived there. The sheriff's department fugitive team was asked to assist in locating the witnesses, but the responding sergeant said the department was too busy to help. MacDonald searched the databases of several local county jail systems to determine if Ms. Hill and Ms. Felton were incarcerated and "CLEMIS" to determine whether either woman had a run in with any police department. Hospitals and the county medical examiner were contacted to determine if either witness was injured or dead. Detective MacDonald used a system called

"Accurate" to trace any known addresses of Hill, Micarle Felton, or their relatives. The phone numbers MacDonald had obtained from the witnesses seemed to be invalid. Detective MacDonald left approximately 20 messages at the number provided by Micarle Felton but received no answer. The number provided by Hill was out of service. At one point, Detective MacDonald ran into Hill at the courthouse and she provided a new number, which was disconnected shortly thereafter. Detective MacDonald claimed he spoke to Mr. Everett, but he did not know the whereabouts of his sister.

"A good-faith effort...is not an ends-of-the-earth effort, and the lengths to which the prosecution must go to obtain a witness generally amount to a question of reasonableness." *United States v. Cheung*, 350 F. App'x. 19, 23 (6th Cir.2009)(internal quotation marks, citations, and alterations omitted). The prosecution and law enforcement made a good faith effort to bring Ms. Micarle Felton to trial and possibly Ms. Hill as well. *See Winn v. Renico,* 175 F. App'x. 728, 739 (6th Cir. 2006).

ii.

The second prong for admission of either woman's preliminary examination testimony was also satisfied because Petitioner had an opportunity to cross-examine them at the preliminary examination. Although "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes," the Sixth Circuit in *Al-Timini* noted that the Supreme Court in *Barber* indicated that "there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable." *See Al–Timimi v. Jackson*, 379 F. App'x. 435, 437-38 (6th Cir.2010) (quoting *Barber*, 390 U.S. at 725-26). The Sixth Circuit in *Al-Timini* also noted that the Supreme Court

appeared "to have retreated from the doubts it expressed in *Barber* by finding that the opportunity for cross-examination afforded at a preliminary examination may satisfy the Confrontation Clause in at least some circumstances." *Id.* The Sixth Circuit in *Al-Timini* observed that the Supreme Court in the cases of *California v. Green,* 399 U.S. 149 (1970) and *Ohio v. Roberts,* 448 U.S. 56 (1980) had found no Confrontation Clause violation by the admission of an unavailable witness's preliminary examination testimony because the defendants in both cases had the opportunity to cross-examine the witness at the preliminary examination. *Al-Timini*, 379 F. App'x. at 438-39. At the preliminary hearing in this case, Petitioner was represented by counsel. His counsel was given a full opportunity to cross-examine both women without any restriction by the examining magistrate. Accordingly, the trial judge's decision to admit the testimony of Ms. Micarle Felton and Ms. Hill from the preliminary examination when they were declared unavailable to testify was not contrary to or an unreasonable application of clearly established federal law. *Williams,* 759 F. 3d at 635-36; *Al-Timini*, 379 F. App'x. at 439.

iii.

Even if the admission of either woman's preliminary examination testimony was in error, Petitioner would not be entitled to habeas relief because the Michigan Court of Appeals reasonably concluded that the admission of their preliminary examination testimony was harmless in light of the overwhelming evidence against Petitioner. Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F.3d 329, 334 (6th Cir. 2001). On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). In *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) (per curiam), the Supreme Court held that habeas relief would

be appropriate only if a habeas petitioner could show that a state court applied harmless error review in an "'objectively unreasonable' manner."

However, in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. "Citing concerns about finality, comity, and federalism," the Supreme Court in *Brecht* "rejected the *Chapman* standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions." *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

Because Petitioner seeks federal habeas corpus relief, he must meet the *Brecht* standard, but that does not mean "that a state court's harmlessness determination has no significance under *Brecht*." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). Where a state court uses the *Chapman* standard to determine that an error was harmless beyond a reasonable doubt, a federal court cannot grant habeas relief unless the state court applied the *Chapman* harmless error standard in an objectively unreasonable manner. *Id.* at 2198-99.

In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F.3d 373, 379 (6th Cir. 2009) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

The Michigan Court of Appeals reasonably concluded that the admission of Ms. Hill's and Ms. Felton's preliminary examination testimony was harmless in light of the compelling direct and circumstantial evidence of Petitioner's guilt. Mr. Everett at trial identified Petitioner as being present at Prue's Bar with co-defendant Buccannion at the time of the first assault. Mr. Everett later identified Petitioner as being the shooter. Petitioner was later found in the State of Arizona with the car that he used to flee from the store the night of the shooting. Detective MacDonald obtained that car's description and license plate number from Micarle Felton. Detective Hix was unable to find Petitioner at his address and learned that Petitioner fled the State of Michigan. Petitioner's car was entered as a wanted vehicle and the plate had a hit in Tennessee. The car was registered to Mr. Buccannion's father. There was evidence that Petitioner and Buccannion are related to each other. Petitioner was ultimately arrested in Tucson, Arizona by the U.S. Marshal's Service. When law enforcement announced their presence at the door where Petitioner was hiding, Petitioner fled out the back. Under Michigan law, flight may be considered some evidence of consciousness of guilt. *Johnson v. Burke*, 903 F. 2d 1056, 1062 (6th Cir. 1990) (internal citations omitted).

In light of all of the evidence linking Petitioner to the co-defendant and to the crime, coupled with his flight from the State of Michigan with the car used during the shooting and his attempts to flee from the police in Arizona, Petitioner is not entitled to habeas relief because the Michigan Court of Appeals reasonably determined that the admission of this evidence was harmless error. *See Davis v. Ayala,* 135 S. Ct. at 2198-99. Petitioner is not entitled to relief on his first and fourth claims.

B.

Petitioner's ineffective assistance of counsel claims are consolidated for judicial clarity. Petitioner alleges the ineffective assistance of trial counsel in his third claim. Petitioner raises several ineffective assistance of appellate counsel claims in his second, fifth, and sixth claims.

Respondent contends that Petitioner's claims are procedurally defaulted, because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise this claim in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claims, because the state post-conviction review was his first opportunity to raise these claims. *See Guilmette v. Howes,* 624 F. 3d 286, 291 (6th Cir. 2010). Moreover, with respect to Petitioner's ineffective assistance of trial counsel claim, Petitioner claims that his appellate counsel was ineffective for failing to raise this claim in his appeal of right. Ineffective assistance of counsel may establish cause for procedural default of a claim. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If Petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his ineffective assistance of trial counsel claim on his direct appeal in the state courts. *Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000). Because the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted ineffective assistance of trial counsel claim, it is more efficient to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was

not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland*

claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

i.

In his third claim, Petitioner argues that trial counsel was ineffective during her cross-examination of Everett Felton, because it led to Felton positively identifying Petitioner as the shooter, even though he had not done so during the preliminary examination or the direct examination. During her cross-examination of Felton regarding the identity of the shooter, defense counsel asked, "[t]oday, you're saying it was Mr. Murphy, correct, the man in the black shirt?" Everett Felton answered, "[y]eah."

Petitioner raised this claim in his post-conviction motion for relief from judgment. The judge denied the claim: [2]

> To demonstrate that defense counsel's questioning amounted to ineffective assistance of counsel, Defendant must overcome a strong presumption that the questioning constituted sound trial strategy. Decisions regarding how to question witnesses are presumed to be matters of trial strategy, which should not be second-guessed. While defense counsel asked the question in a manner that implied that Felton believed Defendant to be the shooter, she nevertheless may have expected Felton to answer in the negative given his prior testimony. Ineffective assistance of counsel will not be found merely because a strategy backfires. Even if defense counsel asked the leading question because she mistakenly believed that Felton had previously identified Defendant as the shooter, Defendant has not shown a reasonable probability that the outcome of the trial would have been different had trial counsel not questioned Felton as she did. (Sic) unless he demonstrates good

---

[2] Although the state judge court judge also mentioned Mich.Ct.R. 6.508(D)(3) in rejecting Petitioner's claim, the AEDPA's deferential standard of review would nonetheless apply because the judge alternatively rejected the claims on the merits. *See Moritz v. Lafler*, 525 F. App'x. 277, 284 (6th Cir. 2013).

cause for failing to raise the issue on appeal and actual prejudice from the alleged error. MCR 6.508(D)(3). Defendant contends that he has good cause for failing to raise the issue on appeal because he was denied the effective assistance of appellate [counsel]. The defense theory was that there was no certainty regarding the description or identity of the shooter. During her closing arguments, defense counsel called Felton's identification testimony into question, noting that, after the shooting, Felton gave a description of the shooter that did not match Defendant's appearance, that Felton failed to identify Defendant in a photographic array or at the preliminary examination, and that the first time Felton identified Defendant was at trial. Furthermore, there was substantial circumstantial evidence that Defendant was the shooter. There was evidence that Defendant, a white male, was with codefendant Buccannion at Prue's Bar about one and a half to two hours before the shooting, that a white male was with Buccannion at the store where the shooting occurred, and that a white male, other than Buccannion, was the shooter. After the shooting, the police found Defendant in Arizona with a burgundy car matching the description of the car involved in the shooting.

*People v. Murphy,* No. 12-240730-FC, * 4-5 (Oakland Cty.Cir.Ct., June 20, 2016)(internal citations and footnote omitted).

Counsel's performance in eliciting allegedly prejudicial testimony from Mr. Felton against Petitioner was not deficient, so as to support Petitioner's ineffective assistance of counsel claim. The question appears to have been part of a legitimate strategy to cast doubt on the prosecution's case or Mr. Felton's credibility. *See Campbell v. U.S.*, 364 F.3d 727, 734-35 (6th Cir. 2004); *See also Urban v. Ohio Adult Parole Auth.*, 116 F. App'x. 617, 622 (6th Cir. 2004)(counsel's eliciting from state witness during cross-examination in criminal proceedings for Medicaid fraud that defendant acted inappropriately and had improperly billed witness's girlfriend for medical services that were never performed was reasonable trial strategy; counsel's cross-examination of the witness was an attempt to portray the witness as biased). Moreover, counsel's question did not prejudice Petitioner, because as mentioned above, there was substantial evidence to support Petitioner's conviction. The evidence against Petitioner was compelling; Petitioner is unable to show that he was prejudiced by the counsel's elicitation of damaging information from Mr. Felton. *See Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002). Petitioner's third claim is meritless.

ii.

Petitioner in his second claim argues that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on his appeal of right. The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on an appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As explained above, Petitioner's trial counsel was not ineffective. *See* Section III.B.i. Thus, Plaintiff cannot establish that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his direct appeal. *See e.g. Fautenberry v. Mitchell,* 515 F. 3d 614, 642 (6th Cir. 2008). Petitioner is not entitled to relief on his second claim.

iii.

Petitioner in his fifth claim alleges that he was denied the assistance of appellate counsel because his appellate attorney failed to raise any challenges to the assault with intent to do great bodily harm conviction arising out of the first incident at Prue's Bar. Petitioner argues that appellate counsel was required to file an *Anders* brief before deciding not to raise any challenges to this conviction.

Petitioner appears to argue that since the assault with intent to do great bodily harm conviction arose out of an earlier incident, appellate counsel had a duty to challenge this conviction as though it had been obtained at a separate trial. Petitioner ignores the fact that the first incident at Prue's Bar and the subsequent shooting were consolidated for one trial and later a single appeal. Appellate counsel filed a thirty eight page brief, raising two claims. See Defendant-Appellant's Brief on Appeal, Dkt. 9-12, Pg ID 1217-1262. Contrary to Petitioner's allegation, appellate

counsel at the end of the brief sought the reversal of all of Petitioner's convictions. See Dkt. 9-12, Pg ID 1262. Because the assault with intent to do great bodily harm conviction was consolidated with the other charges, reversal of Petitioner's convictions would most likely have lead to a retrial on this charge as well. In any event, even if appellate counsel chose to challenge only the convictions arising out of the shooting, this is a reasonable decision that defeats Petitioner's claim. *See Maxfield v. State*, 108 Idaho 493, 501, 700 P.2d 115, 123 (Ct. App. 1985) (appellate counsel's decision to appeal only the defendant's involuntary manslaughter conviction instead of convictions on all 21 counts did not amount to ineffective assistance of counsel).

Petitioner, however, argues that appellate counsel should have filed a no-merits brief with the appellate courts before being permitted to forego challenging the assault with intent to do great bodily harm conviction. In *Anders v. California,* 386 U.S. 738, 744 (1967), the U.S. Supreme Court held that a court-appointed appellate counsel could move to withdraw, if, following "a conscientious examination" of the case, appellate counsel determined that the case was "wholly frivolous." The Supreme Court indicated that any request to withdraw should "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* A copy of this brief should be furnished to the defendant and time should be given to allow him to raise any points that he chooses. *Id.* The Supreme Court indicated that the court, and not counsel, should decide, after a full examination of all the proceedings, whether the case is wholly frivolous. If the court makes such a finding, it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned. *Id.*

*Anders* is inapplicable in this case because appellate counsel filed a merits brief challenging Petitioner's convictions. Unlike the defendant in *Anders,* Petitioner's appellate counsel did not seek to withdraw from representation. This Court notes that "the presentation of so-called "*Anders*

issues" within a merits brief is inconsistent with the process established in *Anders*." *See United States v. Boroughf*, 649 F.3d 887, 890 (8th Cir. 2011) (citing *United States v. Meeks*, 639 F.3d 522, 528 n. 2 (8th Cir. 2011)).  Petitioner is not entitled to habeas relief on his fifth claim.

iv.

In his related sixth claim, Petitioner argues that appellate counsel was ineffective for failing to challenge the scoring of the sentencing guidelines for the assault with intent to do great bodily harm conviction. The trial court denied the claim on post-conviction relief, finding that Petitioner's sentencing guidelines had been correctly scored. *People v. Murphy,* No. 12-240730-FC, at * 8. The Michigan appellate courts subsequently denied Petitioner's post-conviction motion.  In this case, the state trial and appellate courts appeared to conclude that there was a factual basis for the scoring of petitioner's sentencing guidelines.

As the Eleventh Circuit noted, when the alleged attorney error involves the failure to object to a violation of state law that does not involve the enforcement of federal constitutional rights or interests, there is no Supreme Court case which prevents a federal court sitting in habeas review of a state court conviction from looking "to whether there is a reasonable probability that the do-over proceeding state law provides would reach a different result." *See Hammond v. Hall*, 586 F. 3d 1289, 1340 (11th Cir. 2009).

In this case, the trial judge and the Michigan appellate courts rejected Petitioner's sentencing guidelines claim.  Petitioner is therefore unable to show that he was prejudiced by his appellate counsel's purported ineffectiveness in failing to challenge the scoring of his sentencing guidelines. *See e.g. Coleman v. Curtin*, 425 F. App'x. 483, 485 (6th Cir. 2011).  If "one is left with pure speculation on whether the outcome of ... the penalty phase could have been any different," there has been an insufficient showing of prejudice. *Baze v. Parker*, 371 F. 3d 310, 322 (6th Cir.

2004). Because Petitioner has offered no evidence to show that the state trial court judge would have been inclined to impose a lesser sentence or that the Michigan appellate courts were inclined to reverse his sentence, Petitioner is unable to show that he was prejudiced by his appellate counsel's purported ineffectiveness in failing to challenge the scoring of his sentencing guidelines. *See Spencer v. Booker*, 254 F. App'x. 520, 525-26 (6th Cir. 2007). Petitioner is not entitled to relief on his sixth claim.

C.

Petitioner has brought a motion to produce evidence and a motion for discovery. In both motions, he seeks the production of the videotape from Prue's Bar, claiming that it would somehow support his misidentification defense.

Habeas petitioners have no right to automatic discovery. *Stanford v. Parker*, 266 F. 3d 442, 460 (6th Cir. 2001). Under Rule 6 of the Rules Governing § 2254 Cases, a district court has the discretion to grant discovery to a petitioner in a habeas case upon a fact-specific showing of good cause. *Id.* A federal district court may permit discovery in a habeas case if Petitioner presents specific allegations which give the court reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate. *See Johnson v. Mitchell,* 585 F.3d 923, 934 (6th Cir. 2009); *See also Lott v. Coyle,* 261 F.3d 594, 602 (6th Cir. 2001). However, Rule 6 of the Habeas Rules does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley*, 380 F. 3d 932, 974 (6th Cir. 2004) (internal quotation omitted). A habeas petitioner's conclusory allegations are insufficient to warrant discovery under Rule 6. *Id.* Instead, Petitioner must set forth specific allegations of fact. *Id.*

Petitioner appears to argue that the video from the bar would show that there was someone other than Petitioner on this videotape who matched the victims' description of the shooter and

would thus absolve him of the crimes. This Court has already determined that Petitioner's allegations, even if true, would not entitle him to habeas relief. In light of the fact that Petitioner's claims are without merit, Petitioner is not entitled to seek discovery in support of his claims. *See Sellers v. U.S.,* 316 F. Supp. 2d 516, 523 (E.D. Mich. 2004). Petitioner has failed to show that the requested discovery could resolve any factual disputes that would entitle him to relief on his any of his claims. *Williams,* 380 F. 3d at 975. Petitioner is also not entitled to discovery of the videotape, because it is cumulative of evidence presented at trial that had impeached the witnesses' identifications. *Id.* at 976-77.

IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed.R.App. P. 24(a).

V.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that the motions to produce evidence [Dkt. # 7] and for discovery [Dkt. # 10] are **DENIED.**

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

Dated: February 13, 2019                              s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Don Murphy** #528662, SAGINAW CORRECTIONAL FACILITY, 9625 PIERCE ROAD, FREELAND, MI 48623 by first class U.S. mail on February 13, 2019.

s/Kelly Winslow
KELLY WINSLOW